**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **TAYLOR LEMONS,** individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**WALGREEN PHARMACY SERVICES MIDWEST, LLC, WALGREEN PHARMACY SERVICES EASTERN, LLC,** and **WALGREEN PHARMACY SERVICES WESTERN, LLC,**<br><br>Defendants. | Case No. 3:21-cv-00511-MO<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

**LOCAL RULE 7-1(a) CERTIFICATION** ......................................................... 3

**MOTION** ..................................................................................................... 3

I.    FACTS AND PROCEDURAL HISTORY ............................................. 3

   A.    Scope of Discovery ...................................................................... 6

II.   ARGUMENT ........................................................................................ 8

   A.    The Rule 23(a) Factors Are Satisfied .......................................... 8

     1.    Numerosity ............................................................................. 9

     2.    Commonality .......................................................................... 10

     3.    Typicality ............................................................................... 12

     4.    Adequacy ............................................................................... 14

   B.    The Rule 23(b)(3) requirements are met ..................................... 16

     1.    Predominance ......................................................................... 16

     2.    Superiority ............................................................................. 19

III.  CONCLUSION ..................................................................................... 22

## LOCAL RULE 7-1(a) CERTIFICATION

Plaintiffs' counsel certifies that he has made a good-faith effort to resolve the issues presented in this motion, and that defendants oppose the motion.

## MOTION

Plaintiff moves to certify a Fed. R. Civ. P. 23(b)(3) class action consisting of all employees of Defendant Walgreen Pharmacy Services Midwest, LLC whose employment was terminated between April 6, 2018 through the date of class certification. Additionally, the court should appoint Plaintiff Taylor Lemons as class representative and Carl Post and the attorneys at the Law Offices of Daniel Snyder as class counsel for the class.

This motion is supported by the Declarations of Carl Post and Taylor Lemons. Exhibits 1 and 2 to the Declaration of Carl Post are being filed under seal according to the terms of the protective order in this case.

## I.    FACTS AND PROCEDURAL HISTORY

This is a putative class action to recover penalties for defendant's practice of untimely paying wages upon termination of employment. Under Oregon law, "[w]hen an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of the discharge or termination become due and payable not later than the end of the first business day after the discharge or termination." ORS 652.140(1). When an employee unilaterally quits with at least 48 hours' notice, payment is due immediately upon termination of employment. ORS 652.140(2)(a). If an employee unilaterally quits without 48 hours' notice, "the wages become due and payable within five days, excluding Saturdays, Sundays and holidays, after the employee has quit, or at the next regularly scheduled payday after the employee has quit, whichever event first occurs." ORS 652.140(2)(b).

With certain exceptions or limitations, ORS 652.150 generally allows for the recovery of penalty wages "if an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145…." The employer acts willfully when "the employer knew what it was doing, intended to do it and was a free agent." *Kling v. Exxon Corp.*, 74 Or. App. 399, 403, 703 P.2d 1021, 1023 (1985). An employer's showing of good faith does not preclude finding of willful failure to pay wages due on termination of employment. *Id.* 402-403. WPSM's knowledge that it was required to timely pay wages upon termination is shown by its policy outlining these requirements. Post Decl., Ex. 1.

WPSM had a practice of failing to timely pay its employees' final paychecks as required by Oregon law. Instead, WPSM would typically pay final paychecks at the next scheduled pay period. SAC, ¶ 43. On October 28, 2014, Lemons began working for Walgreen Pharmacy Services Eastern, LLC or Walgreen Pharmacy Services Western, LLC in Oregon. Taylor Decl., ¶ 1. Around January 1, 2016, Lemons became an employee of Walgreen Pharmacy Services Midwest, LLC. *Id.* His employee number was 2435059. *Id.* Throughout his employment, his wages were paid by direct deposit, which stated that they were paid by Walgreens Co. Additionally, his W2s were issued by Walgreen Co. *Id.* Lemons was subject to Walgreen Co.'s centralized human resources department, which provided payroll services, maintained payroll records, and administered the Walgreens human resources hotline. *Id.* He was directed to call the hotline with personnel-related questions and complaints. *Id.*

In early February 2019, Lemons gave approximately one month notice that he was ending his employment. Taylor Decl., ¶ 2. On March 1, 2019, his employment with WPSM ended. Taylor Decl., ¶ 2. On March 21, 2019, Lemons was paid my final paycheck by direct deposit. Taylor Decl., ¶ 2.

Pay periods during Lemons's employment were from Thursday through the second subsequent Wednesday. Taylor Decl., ¶ 3. He would then receive a direct deposit on Thursday the following week. *Id.* For example, his second to last pay period was Thursday, February 14, 2019 through Wednesday, February 27, 2019, with a check date/direct deposit on March 7, 2019. Similarly, his last pay period was Thursday February 28, 2019 through Wednesday March 13, 2019, with a check date/direct deposit on March 21, 2019. A summary of his direct deposit dates from December 3, 2015 through March 21, 2019, and the dates of the respective pay period dates, is attached to his declaration as Exhibit 1.

On March 1, 2019, Plaintiff's employment with WPSM ended. Plaintiff's wages were due by the end of the next business day. SAC ¶ 41. Plaintiff was not paid his final wages until March 21, 2019. *Id*. at 42. In violation of ORS 652.140, WPSM failed to timely pay Plaintiff his final wages and he is owed a penalty of $3,347.20 pursuant to ORS 652.150. WPSM did the same for all proposed class members. *Id*. at ¶¶ 82-87.

The requirements to prove the amount of penalty wages owed for each employee can easily be determined from Defendant's employment and payroll records. The basic information needed for each employee whose employment ended is: 1) each person that had their employment terminated on or after March 8, 2017; 2) Whether the decision to terminate the person's employment was made by the defendant, was mutual, or was made unilaterally by the employee; 3) If made unilaterally by the employee, the date notice, if any, was given; 4) The last date of employment; 5) The date final wages were paid; and 6) The hourly rate or equivalent hourly rate to calculate the penalty pursuant to ORS 652.150.

Filed under seal as Exhibit 2 to the Declaration of Carl Post is a spreadsheet summarizing certain elements of the payroll records provided by defendant to date. There are an estimated 561

potential members of the class. However, some of the members of the class have multiple claims. For example, some employees had their employment with defendant end during the class period, worked for defendant again, and had their employment end again. In this scenario, they are counted as 1 class member but would be owed penalties for each failure to timely pay wages upon termination. The data received to date of approximately 320 members establish defendant's practice of paying final wages late. Additional information is required to determine if some of the employees are class members. For example, some checks provided are not the employees final wage check, some checks are blank, and some checks do not have the check or payment date included. See Post Decl., ¶ 3.

Pursuant to Rule 23(b)(3), Lemons seeks to have certified, and represent, a class for all similarly situated class members, who worked for WPSM in Oregon, had their employment terminated any time after March 8, 2017, and did not receive their final paycheck within the time required by ORS 652.140.

## A.    Scope of Discovery

Lemons filed a second amended complaint on September 8, 2021. ECF 22. Defendants moved to dismiss the second amended complaint in its entirety. ECF 25. The court denied Defendants' motion to dismiss Plaintiff's third claim for relief. ECF 33, p. 6. Regarding the third claim for relief, the court noted the class claim centers around one allegation:

> [Walgreen Midwest] had a practice of failing to timely pay its employees whose employment ended when required by Oregon law. Instead, [Walgreen Midwest] would pay final paychecks at the next schedule[d] pay period.

ECF 33, p. 5 (citing Second Am. Compl. [ECF 22] ¶ 43).

To date, discovery has been limited to issues relating to class certification issues. *See* Dkts. 24, 38, 52, 54, 63, and 65. However, the parties were unable to resolve the scope of

discovery prior to the motion to certify the class action and Plaintiff filed a motion to compel on

March 3, 2023. Dkt. 55. In his motion, Plaintiff noted that:

> Defendants have produced responsive documents concerning the
> Plaintiff. Defendants have produced a few payroll reports that
> includes information concerning approximately 130 employees
> whose employment was terminated. Additionally, defendant
> provided the final paycheck or paystub for most of these
> individuals. The payroll reports contain most of the information
> requested for each of those employees. The information in the
> reports provide the employee id number, start date, termination
> date, location worked, termination reason, and some other
> information immaterial to this motion. The name of each
> individual is redacted and identified by employee number.
> Additionally, all documents relating to third parties have been
> marked confidential subject to the protective order in this case.

*See* Dkt. 55, p. 5. Defendant objected to providing addition discovery stating it went "directly to

the merits of Plaintiff's claim, which is neither necessary nor appropriate prior to class

certification." Dkt. 58, p. 2. Defendant objected to providing statewide data stating it had

provided "all of the information Plaintiff needs to move for class certification." Dkt. 58, p. 4.

Additionally, defendant objected to providing any additional discovery, regardless of location,

requested by Plaintiff such as: whether the employment was terminated by mutual agreement;

whether the employee quit; if the employee quit, the date notice was given by the employee, and

the date(s) those wages or other compensation were paid to each person, among other

information requested in Plaintiff Request for Production No. 3. *See* Dkt. 58, pp. 5-10.

      After oral argument, the court granted Plaintiff's motion to compel in part, requiring

statewide discovery be produced similar to the discovery previously produced but otherwise

denied the motion to compel. Dkt. 61. As such, this briefing will not focus on the liability for

each class member. Because discovery has been limited to certification issues, at this point, we

are focused only on establishing the Rule 23 elements of numerosity, commonality, typicality, adequacy, predomination and superiority.

## II.    ARGUMENT

"A class action may be maintained if Rule 23(a) is satisfied and if" one of the three categories in Rule 23(b) is satisfied. Fed. Rule Civ. Proc. 23(b); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 398, 130 S. Ct. 1431, 1437 (2010). "By its terms this creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398, 130 S. Ct. 1431, 1437 (2010). The decision to bring a class action resides in the plaintiff if Rule 23 is satisfied. *Id.*

The district court must perform a "rigorous analysis" to ensure that the requisite requirements for certification are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51, 131 S. Ct. 2541 (2011). This analysis may "entail some overlap with the merits of the plaintiff's underlying claim." *Id*. However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1194 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* The plaintiff's burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022).

### A.  The Rule 23(a) Factors Are Satisfied

Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). Each of these requirements are met in this case.

### 1. Numerosity

 "The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon*, 150 F.3d at 1019 (quoting Fed. R. Civ. P. 23(a)(1)). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Franco-Gonzales v. Napolitano*, 2011 WL 11705815, at *6 (C.D. Cal. Nov. 21, 2011) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964)). "[W]here a class is large in numbers, joinder will usually be impracticable. *Jordan v. Cnty. of L.A.*, 669 F.2d 1311, 1319 (9th Cir. 1982) (citing 3B Moore's Federal Practice P 23.05(1) (2d ed. 1974)).

Most courts, including courts in the Ninth Circuit and this district, presume numerosity where the proposed class contains 40 or more members. *See Jordan v. Los Angeles Cty.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds by* 459 U.S. 810 (1982)(inclined to find the numerosity requirement satisfied solely on the basis of 39 ascertained class members); *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013)(as a rule of thumb, 40 member is sufficient to satisfy numerosity requirement); *see also McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-cv-1921-SI, 2020 U.S. Dist. LEXIS 72904, at *11 (D. Or.

Apr. 24, 2020) (same); *Or. Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 373 (D. Or. 1998) (rule of thumb is 40; therefore, 50 class members is sufficient to presume joinder of the class members is impracticable without reference to the other factors identified in *Jordan.*).

Plaintiff's proposed Class readily satisfies Rule 23(a)'s numerosity requirement. The Class has more than 500 members.

### 2. Commonality

For commonality, "[w]hat matters to class certification… is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541 (2011) (italics in original). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart*, 564 U.S. at 359 (citation and formatting omitted); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (noting that "commonality only requires a single significant question of law or fact"). "Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quoting *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008)). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

*Wal-Mart* explicitly recognized that a broad challenge to specific policies or practices affecting all putative class members generally meets the commonality requirement. For example, the Supreme Court explained that "if [an] employer 'used a biased testing procedure to evaluate

both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a).'" *Wal-Mart*, 131 S. Ct. at 2553. Where Lemons challenges statewide practices that affect all of the putative class members, they too satisfy these requirements.

Any minor factual differences among members of the class do not undermine commonality. *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (rejecting defendant's argument that class was improperly certified in prison case alleging several forms of systemic disability discrimination and stating that "individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality"). *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) is instructive on this point. In *Rodriguez*, the plaintiff sought certification of a class of individuals held in immigration detention in California for more than six months without a hearing. *Rodriguez*, 591 F.3d at 1111. The Ninth Circuit rejected the argument that class certification should be denied because each individuals' case turned on "divergent questions of statutory interpretation and consideration of different factual circumstances," finding that "the commonality requirement asks us to look only for some shared legal issue or a common core of facts." *Id*. at 1122.

The Court will have to determine whether Defendants' conduct in failing to timely pay employees all wages owed upon termination was willful entitling Plaintiff and class members to penalty wages under ORS 652.150. *See Migis v. Autozone, Inc*., 282 Or. App. 774, 790-803 (2016). This includes common issues such as:

(a) Defendant's regular pay periods and paydays;
(b) Defendant's centralized payroll system;
(c) whether Defendant has a policy of requiring its store managers to request a terminating employee's final paycheck;

(d) whether Defendant has a practice of sending a terminated employee's final paycheck to the employee's former store;

(e) whether Defendant systematically failed to pay Plaintiff and all putative class members their final wages when due;

(f) whether Defendant's systematic failure to timely pay wages upon termination was "willful" as that term is defined under Oregon law for purposes of complying with ORS 652.140; and

(g) whether employees who have one or more Off-the-Clock or Unpaid Meal Period claims, and whose employment; and

(h) Whether class members are entitled to recovery their attorney fees under either ORS 652.200.

Plaintiff's proposed class readily satisfies the commonality requirement.

### 3. Typicality

To be certified as a class, either the claims or defenses of the representative parties must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citations and quotations removed). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, 131 S. Ct. at 2551 n.5. "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." 131 S. Ct. at 2551 n.5.

"Typicality refers to the nature of the claim or defense of the class representative" but "not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards, representative claims

are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

To determine typicality, "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 734 (9th Cir. 2007) (emphasis added). Indeed, this Court has expressly held that, to establish typicality, "it is not necessary that all class members suffer the same injury as the class representative." *Id.* "The requirement of typicality is not primarily concerned with whether each person in a proposed class suffers the same type of damages; rather, it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).

Lemons's claim is the same or similar to the claims of the members of the proposed class; in other words, they are "reasonably co-extensive with those of absent class members" and therefore satisfy Rule 23(a)(3)'s typicality requirement. Notably, differing levels of injury do not defeat typicality—so long as the class representative's claim is similar to and arises from the same course of conduct as the unnamed class members' claims, typicality is satisfied. *Ramirez v. TransUnion, LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020) (differences in severity of injuries does not defeat typicality), *cert. granted*, 141 S. Ct. 972 (2020); *see also Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) ("We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries resulted from the same, injurious course of conduct." (citing *Armstrong v. Davis*, 275 F.3d 849, 868–69 (9th Cir. 2001)).

In this case, Lemons and all other members of the putative class suffered the same or similar injury by defendant's failure to timely pay wages upon termination. This injury is a result of a course of conduct that is not unique to any of them and follows from the course of conduct at the center of the class claims. The typicality requirement is satisfied.

### 4. Adequacy

Finally, Rule 23(a) requires "representative parties [who] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To resolve the question of legal adequacy, the court must answer two questions: "(1) do the named plaintiff and his counsel have any conflicts of interest with other class members and (2) will the named plaintiff and his counsel vigorously prosecuted the action on behalf of the class?" *Hanlon*, 150 F.3d at 1020. This adequacy inquiry considers a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins*., 982 F.2d 386, 390 (9th Cir.1992).

Here, there are no conflicts between plaintiff and the class, plaintiff has faithfully represented the putative class members, and will continue to do so. Lemons. Decl., ¶ 1. Lemons does not have any interests that are antagonistic to the interests of the class. Both Lemons and class members have a common interest in recovering penalty wages for the untimely payment of wages at the termination of their employment.

Lemons's counsel is aware of no conflicts of interest between themselves and members of the class. Post Decl. ¶ 6. The undersigned counsel has and will represent the class fairly, adequately, and vigorously. *Id.* The Law Offices of Daniel Snyder and its lawyers are sufficiently qualified and experienced to conduct this litigation. Post Decl. ¶ 5. Class counsel has

the experience, knowledge of applicable law, and resources required to vigorously represent the class. *Id.*; *see Jordan*, 669 F.2d at 1323 (9th Cir. 1982) (holding that adequacy of counsel can be met by showing that the named plaintiffs' attorneys are qualified, experienced, and generally able to conduct litigation).

The undersigned has experience handling cases with varied employment law, civil rights law, disability rights law, and medical malpractice claims. Post Decl., ¶ 5. Additionally, he has ample experience with wage claims and knowledge of the legal and factual issues in this litigation. *Id*. Furthermore, he is currently representing several inmates concerning a putative class action against Multnomah County and is representing several hundred inmates in two mass tort cases. *See* USDC Case Nos. 3:21-cv-00501-AA, 3:21-cv-00196-SB, and 3:22-cv-00487-SB. *Id.*

Undersigned counsel also meets the requirements of Rule 23(g), and should therefore be appointed as class counsel. Fed. R. Civ. P. 23(g) ("a court that certifies a class must appoint class counsel"). Under the rule, in appointing class counsel, a court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id*. Undersigned counsel has been heavily involved in the investigation and litigation of this matter since April 2021. Counsel also has extensive experience in handling wage claims, other complex litigation, and federal practice, and has sufficient resources to vigorously prosecute this case. Therefore, the adequacy requirement of Rule 23(a)(4) is satisfied, Lemons should be appointed as Class Representative, and Lemons's counsel should be appointed as Class Counsel.

**B.**  **The Rule 23(b)(3) requirements are met**

To maintain a damages class, Plaintiffs must establish that common questions of law or fact predominate over individual questions, and that a class is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Certification pursuant to Rule 23(b)(3) "is appropriate 'whenever the actual interests of the parties can be served best by settling their differences in a single action.'" *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1777 (2d ed. 1986)).

Rule 23(b)(3) lists four nonexclusive factors "pertinent" to the court's review of the predominance and superiority criteria: (1) the interests of the class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (4) the likely difficulties in managing a class action. *Amchem Prods. v. Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231, 2246 (1997)(citing Fed. R. Civ. P. 23(b)(3)(A)–(D)). At bottom, predominance and superiority test whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623, such that adjudication by representation would be both fair and efficient. 7A Wright & Miller, Federal Practice & Procedure § 1779, at 174 (3d ed. 2005); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001)("A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis.").

**1.  Predominance**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249 (1997)(citing 7A Wright & Miller, 518-519.)

Judicial economy and fairness are the focus of the predominance and superiority inquiry. *Or. Laborers- Employers Health & Welfare Trust Fund*, 188 F.R.D. at 375. The inquiry "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)" and "focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quoting Wright & Miller, *supra*, § 1778).

"Predominance is not, however, a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (internal citation omitted).

"When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54, 136 S. Ct. 1036, 1045 (2016)(quoting  7A Wright & Miller, Federal Practice and Procedure §1778, pp. 123-124 (3d ed. 2005)).

The predominance analysis takes into account questions of damages. *Just Film, Inc. v.*

*Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017). "[P]laintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013)(citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S. Ct. 1426, 1435 (2013)). However, "damage calculations alone cannot defeat certification." *Id.* at 513. Indeed, "damages determinations are individual in nearly all wage-and-hour class actions" and to not certify "a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device." *Id.* at 513-14.

Critically, the "Ninth Circuit has emphasized that common employment policies and practices are frequently central to the predominance analysis, and where such policies are present predominance is rarely defeated." *Harrison v. Harry & David Operations*, No. 1:18-cv- 00410-CL, 2020 US Dist LEXIS 249313, at *25 (D Or Oct. 21, 2020) (citing *Senne v. Kan. City Royals Baseball Corp*., 934 F.3d 918 (9th Cir 2019); *see also Chastain v. Cam*, No. 3:13-cv- 01802-SI, 2016 US Dist LEXIS 52092, at*28 (D. Or. Apr. 19, 2016) (finding predominance because the defendant's uniform policies and procedures would establish whether wage and hour laws were violated). Indeed, in *Senne*, the Ninth Circuit recognized that an employer's uniform policies "carry great weight" for the purposes of certification, and that it is a "rare" case where predominance is defeated when such common practices or policies exist. *Senne v. Kan. City Royals Baseball Corp*., 934 F.3d 918, 943 (9th Cir 2019). Here, the claims alleged by the class rest on Defendant's pay policies and practices.

In this case, the common questions that Plaintiff has identified present a significant aspect of Plaintiffs' case and most appropriately are resolved through a single, class-wide adjudication. Furthermore, judicial economy supports a finding of predominance. As explained above, the same liability and causation questions exist with respect to each of the

claims for all members of the Class. Certification is appropriate.

### 2. Superiority

In addition to the predominance requirement, Rule 23(b)(3) provides a nonexhaustive list of matters pertinent to the court's determination that the class action device is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3)(A)-(D). These matters include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *Id.* "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (quoting 7A Wright & Miller, Federal Practice and Procedure § 1780 at 562 (2d ed. 1986)).

### a. the interests of the class members in individually controlling the prosecution of separate actions

The individual members of the proposed class have little or no interest in individually controlling the prosecution of this action. The calculation of each class members damages will be based on a straightforward formula. *See Or. Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris*, 188 F.R.D. 365, 377 (D. Or. 1998) (calculation of damages based on straightforward formula provides little or no interest in individually controlling the prosecution of this action.)

Additionally, where damages suffered by class members are not large, this factor weighs

in favor of certification, *Zinser*, 253 F.3d at 1190 (citing *In re Dalkon Shield IUD Prods. Litig.*, 693 F.2d 847, 856 (9th Cir. 1982)), particularly when compared with the litigation costs or other barriers to pursuing individual claims, *In re Arizona Theranos, Inc. Litig.*, 2020 WL 5435299, at *9 (D. Ariz. Mar. 6, 2020). Here, it is in the Class Member's best interest to litigate their claims in a single action. Individual actions would entail increased expenses, duplication of discovery, and a potential for inconsistent results. *See Phelps,* 261 F.R.D. at 563; *Morelock Enters. v. Weyerhaeuser Co.,* 2004 WL 2997526, *5 (D. Or. Dec. 16, 2004). Class Members would have "less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery" should they be required to individually litigate their claims. *Hanlon,* 150 F.3d at 1023. In fact, Class Members may likely forego pursuing claims, since their individual damages are relatively small compared to the cost of litigating in federal court or elsewhere.

> **b.**     **the extent and nature of any litigation concerning the controversy already begun by or against class members;**

This factor "'is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits If the court finds that several other actions already are pending and that a clear threat of multiplicity and a risk of inconsistent adjudications actually exist, a class action may not be appropriate . . . .'" *Zinser*, 253 F.3d at 1191 (quoting 7A Wright & Miller, Federal Practice & Procedure § 1780, at 568–70. Plaintiff is not aware of any other litigation concerning this controversy by other class members.

> **c.**     **the desirability or undesirability of concentrating the litigation of the claims in a particular forum;**

It would be far more time consuming for each individual putative class member to seek and compel discovery. For example, the employees of defendant would need to be deposed numerous

times regarding the same subject matter. Further, the parties would need to individually retain experts and/or litigate damages issues. A class action is thus the most efficient and economical approach for pursuing the claims at issue. *See Amchem Prods.,* 521 U.S. at 615, 117 S. Ct. 2231 (Fed. R. Civ. P. 23 exists to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all"). For these reasons, certification of the class action is appropriate.

### d.    the likely difficulties in managing a class action.

Class actions are superior "[p]articularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259-60 (11th Cir. 2004). In *Leyva v. Medline Indus.*, 716 F.3d 510, 515 (9th Cir. 2013), the Ninth Circuit determined the "district court incorrectly held that class certification was not the superior method of adjudication because of the difficulty of managing the approximately 500-member class and determining "the extent to which each putative class member lost wages, and, consequently, suffered damages." The court noted that courts routinely certify larger and more complex classes. *Id. See Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 364 (C.D. Cal. 2009) (certifying class of "nearly 6,000" employees who alleged that their employer failed to pay minimum wages, provide proper meal and rest periods, provide accurate wage statements, or provide wages due upon termination); *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 402 (C.D. Cal. 2008) (certifying class of 15,000 employees who alleged that their employer's policies violated state reporting time and split-shift regulations). Additionally, an estimated 450-member class was found manageable in a similar final wage class action and successfully tried. *See Migis v.*

*Autozone, Inc*., 282 Or. App. 774 (2016); Post Decl., Ex. 4 (Order on Plaintiff's Motion for

ORCP 32C Class Action Certification).

      Based on the foregoing, a class action is superior.

**III.**    **CONCLUSION**

      For all of these reasons, Plaintiff moves the Court for an order certifying the class.

DATED: January 8, 2024

                        LAW OFFICES OF DANIEL SNYDER

                        *s/ Carl Post*
                        Carl Post, OSB No. 061058
                        carlpost@lawofficeofdanielsnyder.com
                        John Burgess, OSB No. 106498
                        johnburgess@lawofficeofdanielsnyder.com
                        Telephone: (503) 241-3617
                        Facsimile: (503) 241-2249
                        Attorneys for Plaintiff