IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**TAYLOR LEMONS**, individually and on
behalf of all similarly situated individuals,

             Plaintiff,

    v.

**WALGREEN PHARMACY SERVICES
MIDWEST, LLC, WALGREEN
PHARMACY SERVICES EASTERN,
LLC**, and **WALGREEN PHARMACY
SERVICES WESTERN, LLC**,

           Defendants.

Case No. 3:21-cv-00511-MO

OPINION & ORDER

**MOSMAN, J.,**

    This matter comes before me on Plaintiff's Motion to Certify the Class [ECF 70]. For the

reasons below I GRANT in part the motion.

## BACKGROUND

    Defendants (jointly "Walgreens") are subsidiaries of Walgreens Co. Plaintiff Taylor

Lemons began working for one of these subsidiaries in October 2014 and became an employee of

Walgreens Midwest around January 1, 2016. Second Am. Compl. [ECF 22] ¶ 23; Lemons Decl.

[ECF 73] ¶ 3. In early February 2019, Plaintiff gave a one-month notice of resignation. Lemons

Decl. [ECF 73] ¶ 4. Plaintiff left Walgreens Midwest on March 1, 2019, and received his final

paycheck by direct deposit on March 21, 2019. *Id.* Plaintiff alleges that ORS 652.140 required

Walgreens to supply his final paycheck on the next business day after he left his employment,

which would have been March 4, 2019. Mot. to Certify [ECF 70] at 4–5. Therefore, Plaintiff alleges that he is owed a penalty of $3,347.20 pursuant to ORS 652.150. *Id.*

Each Walgreens location is managed by a Store Manager, who are all instructed on Walgreens' final paycheck policy. Defs.' Resp. [ECF 76] at 2–3 (citing Stephenson Decl. [ECF 78] ¶ 6). Store Managers report to District Managers who are responsible for ensuring compliance with policies including the final paycheck policy. Stephenson Decl. [ECF 78] ¶ 3. Walgreens' policy says that "whenever possible, final payment of wages for team members who are involuntarily separated from Walgreens . . . should be made on the date of separation." Second Post Decl. [ECF 72] Ex. 1. The policy says that otherwise, wages are due "no later than the next regular payday," except for particular states. *Id.* For Oregon, the policy says that wages "must be paid no later than the end of the next business day following separation." *Id.*

Plaintiff originally identified two classes. The first consisted of Plaintiff and similarly situated class members who worked for Walgreens Western or Walgreens Eastern in Oregon on December 31, 2015, became employed by Walgreens Midwest on January 1, 2016, and did not timely receive their final paycheck as required by ORS 652.140. SAC [ECF 22] ¶ 58. I dismissed this claim in January 2022. *See* O&O [ECF 33]. The second was the Walgreens Midwest late payment class. This class consists of Plaintiff and similarly situated class members who left their employment any time after January 1, 2016, and did not timely receive their final paycheck as required by ORS 652.140. *Id.* ¶ 59. I left this claim, finding that the allegation that Walgreens Midwest has a policy of paying final paychecks at the next scheduled pay period instead of on time under ORS 652.140 was sufficient to plead a class claim. O&O [ECF 33] at 5–6 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Plaintiff moves to certify a Rule 23(b)(3) class action consisting of all employees of Walgreens who were terminated between April 6, 2018, through April 6, 2021. Mot. to Certify [ECF 70] at 3; Pl.'s Supp. Br. [ECF 92] at 2. Plaintiff also requests the appointment of Taylor Lemons as class representative and Carl Post and the attorneys at the Law Offices of Daniel Snyder as class counsel. *Id.* Oral argument was held on April 23, 2024. At oral argument, it became clear that additional discovery was needed to resolve questions about the elements of commonality and superiority. *See* Tr. of Proc. [ECF 85]. I instructed the parties to conduct limited additional discovery and submit supplemental briefs. *See* Mins. of Proc. [ECF 84]. Plaintiff submitted his supplemental brief on May 31, 2024 [ECF 91], and Defendant filed its brief in response on June 14, 2024 [ECF 95].

## LEGAL STANDARD

To be maintained as a class, an action must meet the four prerequisites under Rule 23(a), in addition to meeting one of the three subdivisions of Rule 23(b). Plaintiffs have the burden of demonstrating that they satisfy the class certification prerequisites by a preponderance of the evidence. *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, Inc.*, 31 F.4th 651, 664 (9th Cir. 2022). A district court has broad discretion in determining whether the moving party has satisfied each Rule 23 requirement. *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). Class certification analysis must be "rigorous" and "may entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 349–52. However, courts may not engage in a "free-ranging" merits inquiry at the certification stage. *Id.*; *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013).

## DISCUSSION

### I.    Rule 23(a)

Rule 23(a) provides four requirements for class actions, commonly referred to as numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)–(4). Plaintiff argues that each of these requirements are met in this case. *See* Mot. to Certify [ECF 70]. Walgreens primarily argues that Plaintiff fails to establish commonality.

#### A.  Numerosity

Numerosity requires that "the class is so numerous that joinder of all members would be impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff argues that most courts presume numerosity where the proposed class contains 40 or more members, and his proposed class has over 500 members. Mot. to Certify [ECF 70] at 9–10 (citing *Jordan v. Los Angeles Cty.*, 669 F.2d 1311, 1319 (9th Cir. 1982)). Walgreens states that it assumes but does not concede that Plaintiff has satisfied the numerosity requirement. I find that the numerosity requirement is met because the class will likely have at least 300 members.

#### B.  Commonality

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy commonality, a plaintiff must demonstrate that the class members "have suffered the same injury" and not "merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 349–50. The class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* One common question alone may suffice to establish commonality. *Id.* at 359.

Plaintiff argues that commonality is met because Plaintiff presents a broad challenge to statewide practices that affect all of the putative class members. Mot. to Certify [ECF 70] at 10–11. Plaintiff argues that factual differences among members here do not undermine commonality. *Id.* at 11 (citing *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010)). Walgreens argues that due to gaps in its records, an individual inquiry is required for each class member, undermining commonality and making class treatment inappropriate. Defs.' Resp. [ECF 76] at 9 (citing ORS 652.140).

I find that reducing the class to members who received their final pay six or more days after their termination date obviates the need for most individualized inquiry. First, take the factual issue of whether a former employee gave notice. If an employee quits with at least 48 hours' notice, wages are due immediately. ORS 652.140(2)(a). If an employee quits without at least 48 hours' notice, then wages are due within five business days, or the next regular payday, whichever comes first. ORS 652.140(2)(b). Limiting the class to members who received their final pay six or more days after their termination date avoids the need for individualized inquiry to determine which class members gave notice of their intent to quit. Likewise, limiting the class this way also avoids the need to identify which members left their employment by mutual agreement because if an employee is discharged or their employment is terminated by mutual agreement, wages earned are due by the end of the next business day. ORS 652.140(1).

Walgreens argues that individualized inquiry is needed to determine accurate termination dates because its system does not record an employee's actual termination date, but rather their last day worked, which is problematic because Oregon's final paycheck statute relies on the date of termination. Defs.' Resp. [ECF 76] at 13–14; Stephenson Decl. [ECF 78] ¶ 14; Defs.' Suppl. Resp. [ECF 95] at 4. But earlier, in response to Plaintiff's Motion to Compel [ECF 55], Walgreens

represented that it produced termination dates for putative class members. *See* Resp. Mot. to Compel [ECF 58] at 3–4. I instructed Walgreens to provide documentation of any time it informed the Court or Plaintiff that the termination dates it provided were not the actual termination dates, and Walgreens did not do so. *See* Mins. of Proc. [ECF 84]; Defs.' Suppl. Resp. [ECF 95]. I find that Walgreens is estopped from arguing that the termination dates it provided are inaccurate. Any remaining quibbles Walgreens has with its own data are insufficient to overcome commonality.

Walgreens also identified Plaintiff's lack of information about whether class members received their final pay in cash or via a payroll check. Defs.' Resp. [ECF 76] at 16–17. A cash payment given on the day of termination satisfies ORS 652.140, which does not specify a manner of payment. This issue is resolved in light of the parties' supplemental briefs. Twenty-six employees were paid in cash and Walgreens provided their date of payment, so no further individualized inquiry will be required. Pl.'s Suppl. Br. [ECF 91] at 2; Fourth Post Decl. [ECF 92-2] Ex. B. Walgreens does not dispute this in its response. *See* Defs.' Suppl. Resp. [ECF 95]. Therefore, the question of manner of payment does not undermine commonality.

Walgreens also argues that potential class members who abandoned their job present a problem because there is no consistent timeline for Store Managers to consider the job abandoned and mark the employee as separated. *See* Defs.' Resp. [ECF 76] at 14; Defs.' Suppl. Resp. [ECF 95] at 13–14. During oral argument, Plaintiff acknowledged that job abandonment would probably require individual determination. Tr. of Proc. [ECF 85] at 12. Sixty-nine employees are listed as having abandoned or walked off their job. Defs.' Suppl. Resp. [ECF 95] at 12–13. I find that removing these sixty-nine individuals from the class eliminates the need for individualized inquiry into what their termination dates should properly be.

Finally, Walgreens broadly argues that its final paycheck policy is facially compliant, so Plaintiff must prove his claims by showing that individual Store Managers acted inconsistently with the policy, and mere data is insufficient to do so. Defs.' Resp. [ECF 76] at 8–10; Defs.' Suppl. Resp [ECF 95] at 2. Walgreens points to cases like *Dukes*, which suggest that if there is no common offending policy, there is no "glue" holding together Plaintiff's claims. *See* 564 U.S. at 352; *C.R. Educ. & Enf't Ctr. v. Hosp. Props. Trust*, 867 F.3d 1093, 1104 (9th Cir. 2017). However, Plaintiff's allegations go beyond "merely pointing to a pattern of harm, untethered to the defendant's conduct." *C.R. Educ. & Enf't Ctr.*, 867 F.3d at 1104. Plaintiff has identified facts, which if true, demonstrate a pattern of Walgreens untimely disbursing final paychecks to former employees. The cases cited by Walgreens are distinguishable because they involved claims which by their nature require individualized inquiry—employment discrimination. In contrast, here, the timing of final paychecks is objective, quantitative, and recorded by Walgreens. Plaintiff's ability to establish a widespread practice of giving final paychecks late is likely to provide a common answer for all class members.

In summary, I reduce Plaintiff's class to members who received their final paycheck six or more days after termination and who did not abandon or walk off their job. This will limit the need for individualized inquiry, and any outstanding factual questions are insufficient to overcome commonality.

## C. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The named plaintiff need not have identical claims as the rest of the class, so long as they arise from a similar course of conduct and share the same legal theory. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116–18 (9th Cir. 2017). I

find that typicality is met. Plaintiff is typical of the other class members in the most relevant facts, which are that he was employed by Walgreens and later left his employment, and he allegedly received his final paycheck late.

### D. Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether this requirement is met, courts have focused on whether there are conflicts of interest between the named plaintiffs and unnamed class members, and whether the named plaintiffs have the ability and incentive to prosecute the action vigorously on behalf of the class. *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023). Plaintiff seeks the appointment of Taylor Lemons as class representative and Carl Post and the attorneys at the Law Offices of Daniel Snyder as class counsel. Mot. to Certify [ECF 70] at 3. The parties have identified no conflicts of interest or concerns about the ability of counsel. I find that adequacy is met.

### II.    Rule 23(b)

In addition to meeting all the Rule 23(a) requirements, a case must also fit into one of the Rule 23(b) categories. *See Amchem Prods., Inc. v Windsor*, 521 U.S. 591, 614 (1997). Rule 23(b) requires that to maintain a damages class, plaintiffs must establish that common questions of law or fact predominate over individual questions, and that a class is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

### A. Predominance

Predominance requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance focuses on whether common questions can be proved through evidence common to

the class, and whether the issues capable of resolution through generalized proof are more substantial than the issues subject only to individualized proof on a given question. *Amgen Prods.*, 568 U.S. at 465–68. An individualized question is one where class members will need evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Predominance may still be met when there are some individualized questions, like certain affirmative defenses peculiar to individual class members. *Id.* In sum, predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is "more demanding" than commonality. *Amchem*, 521 U.S. at 623–24.

Walgreens argues that predominance is not met because individualized questions such as whether former employees were involuntarily terminated are not predominated by common questions and because Plaintiff has not offered evidence of a consistent unlawful policy. Defs.' Resp. [ECF 76] at 25–28. By reducing the class, as I have, to former employees who did not abandon or walk off their jobs and who received their final paycheck six or more days after their termination date, I have reduced the key factual questions to two: termination date, and date of final paycheck. Walgreens has already produced data on both of those questions. Given this, I find that predominance is met. The available evidence answers the same questions for each potential class member and does not require detailed inquiry.

### B. Superiority

Superiority requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides that the following is "pertinent" to predominance and superiority: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature

of any litigation concerning the controversy already begun;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the likely difficulties in managing a class action." *Id.* These factors are usually evaluated in the context of superiority. *E.g.*, *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

As to the first factor, the individual class members have little interest in individually controlling the prosecution of this action because their claims are based on the same basic facts and their damages will be calculated based on a straightforward formula. *See Or. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris*, 188 F.R.D. 365, 377 (D. Or. 1998)). The parties identified no other pending litigation related to Walgreens' final paycheck practices. Walgreens argued during oral argument that former employees have an incentive to pursue individual claims because the penalties are high. Tr. of Proc. [ECF 85] at 25–26. However, Walgreens also conceded that former employees are unlikely to sue for a paycheck received just a couple days late. *Id.* Therefore, I find that concentrating the litigation here is desirable to provide a remedy for former Walgreens employees who may be entitled to damages but are unlikely to pursue their own claims. For the reasons discussed above, I also find that any outstanding factual questions do not create significant difficulties in managing the class action. Superiority is met.

### III.    Rule 23(g)

Rule 23(g) requires courts appointing class counsel to consider (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law; and" (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Class counsel "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Plaintiff seeks the appointment of

Carl Post and the attorneys at the Law Offices of Daniel Snyder as class counsel. Mot. to Certify [ECF 70] at 3, 15. Walgreens does not appear to dispute that the Rule 23(g) factors are met. *See* Defs.' Resp. [ECF 76]. I find that that the undersigned counsel meets the Rule 23(g) factors because he has been heavily involved in the investigation and litigation of this matter since April 2021, he has experience in the relevant areas, and he has sufficient resources to vigorously prosecute the case.

## CONCLUSION

For the reasons given above, I GRANT the Motion to Certify in part. I certify a class consisting of all employees of Walgreens who were terminated between April 6, 2018, through April 6, 2021; who did not abandon or walk off their job; and who received their final paycheck six or more days after their termination date. I appoint Taylor Lemons as class representative and Carl Post and the attorneys at the Law Offices of Daniel Snyder as class counsel.

IT IS SO ORDERED.

DATED July ___, 2024.

MICHAEL W. MOSMAN
Senior United States District Judge