**Carl Post, OSB No. 061058**
carlpost@civilrightsoregon.com
**John Burgess, OSB No. 106498**
johnburgess@civilrightsoregon.com
**Snyder, Post & Burgess**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (971) 442-9303
Facsimile: (503) 241-2249


Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **TAYLOR LEMONS,** individually and on behalf of all similarly situated individuals,<br><br>    Plaintiff,<br><br>  v.<br><br>**WALGREEN PHARMACY SERVICES MIDWEST, LLC, WALGREEN PHARMACY SERVICES EASTERN, LLC,** and **WALGREEN PHARMACY SERVICES WESTERN, LLC,**<br><br>    Defendants. | Case No. 3:21-cv-00511-MO<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

**LR 7-1 CERTIFICATION** ................................................................. 4

**MOTION** ......................................................................................... 4

I.    BACKGROUND ......................................................................... 4

   A.    The Parties and Claims ....................................................... 4

   B.    Discovery and Mediation .................................................... 6

II.   PROPOSED SETTLEMENT TERMS ........................................ 7

   A.    Settlement Payment ............................................................ 7

   B.    Third-Party Settlement Administrator ................................. 9

   C.    Class Notice ........................................................................ 9

   D.    Release of Claims by Class Members Who Do Not Opt-Out ......................................... 10

   E.    Exclusions and Objections ................................................. 11

   F.    CAFA Notices .................................................................... 11

   G.    Attorney fees and costs ...................................................... 12

III.  THE SETTLEMENT MEETS ALL CRITERIA FOR PRELIMINARY APPROVAL ........ 12

   A.    The Settlement Merits Preliminary Approval ..................... 14

     1.    The Class Has Been Adequately Represented ................. 14

     2.    The Settlement Was the Product of Informed Non-Collusive Negotiations .......... 14

     3.    The Settlement Has No Obvious Deficiencies ............... 15

4.    The Settlement Does Not Grant Preferential Treatment to Plaintiff or Segments of the Class ...................................................................................................................... 16

5.    The Settlement Falls Within the Range of Possible Approval ..................................... 17

B.    The *Hanlon* Factors Also Support the Settlement ............................................................ 18

1.    The Strength of Plaintiff's Case ..................................................................................... 19

2.    The Risk, Expense, Complexity and Likely Duration of Further Litigation ............... 19

3.    The Amount Offered in Settlement ............................................................................... 20

4.    The Extent of Discovery Completed .............................................................................. 20

C.    The Notice to the Class Is Sufficient. ............................................................................... 22

IV.    PROPOSED SCHEDULE OF SETTLEMENT PROCEEDINGS ....................................... 22

V.    CONCLUSION ....................................................................................................................... 23

## LR 7-1 CERTIFICATION

Defendants do not oppose this motion.

## MOTION

Plaintiff Taylor Lemons ("Plaintiff") and Defendants Walgreen Pharmacy Services

Midwest, LLC, Walgreen Pharmacy Services Eastern, LLC, and Walgreen Pharmacy Services

Western, LLC ("Walgreens") have reached a full and final settlement of the above-captioned class

action as set forth in the Stipulation and Settlement Agreement of Class Action ("Settlement

Agreement" or "Agreement") attached as Exhibit 1 to the Declaration of Carl Post ("Post Decl.

").[1]  Pursuant to Fed. R. Civ. P. 23(e), Plaintiff seeks preliminary approval of the Settlement

Agreement, approval of the form of Notice to the class members and notice procedures, entry of

a Preliminary Approval Order, and scheduling of the Final Settlement Approval Hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    BACKGROUND

A.  The Parties and Claims

The facts necessary to understand the issues were summarized by the court in its Order

granting class certification and are repeated here, with internal citations removed. *See* ECF 98 at

1-2. Defendants (jointly "Walgreens") are subsidiaries of Walgreens Co. Plaintiff Taylor Lemons

began working for one of these subsidiaries in October 2014 and became an employee of

Walgreens Midwest around January 1, 2016. In early February 2019, Plaintiff gave a one-month

notice of resignation. Plaintiff left Walgreens Midwest on March 1, 2019, and received his final

---

1 Capitalized terms have the same meaning as contained in the Stipulation and Settlement
Agreement of Class Action Claims.  Nothing in this Motion, or anything filed in support of the
settlement, is intended to change or alter the Parties' Settlement Agreement.

paycheck by direct deposit on March 21, 2019. Plaintiff alleges that ORS 652.140 required Walgreens to supply his final paycheck on the next business day after he left his employment, which would have been March 4, 2019. Therefore, Plaintiff alleges that he is owed a penalty of $3,347.20 pursuant to ORS 652.150.

Each Walgreens location is managed by a Store Manager, who are all instructed on Walgreens' final paycheck policy. Store Managers report to District Managers who are responsible for ensuring compliance with policies including the final paycheck policy. Walgreens' policy says that "whenever possible, final payment of wages for team members who are involuntarily separated from Walgreens ... should be made on the date of separation." The policy says that otherwise, wages are due "no later than the next regular payday," except for particular states. For Oregon, the policy says that wages "must be paid no later than the end of the next business day following separation."

Plaintiff originally identified two classes. The first consisted of Plaintiff and similarly situated class members who worked for Walgreens Western or Walgreens Eastern in Oregon on December 31, 2015, became employed by Walgreens Midwest on January 1, 2016, and did not timely receive their final paycheck as required by ORS 652.140. The court dismissed that claim in January 2022. The second was the Walgreens Midwest late payment class. This class consists of Plaintiff and similarly situated class members who left their employment any time after January 1, 2016, and did not timely receive their final paycheck as required by ORS 652.140. The court left this claim, finding that the allegation that Walgreens Midwest has a policy of paying final paychecks at the next scheduled pay period instead of on time under ORS 652.140 was sufficient to plead a class claim.

Plaintiff moved to certify a Fed. R. Civ. P. 23(b)(3) class action consisting of all

employees whose employment was terminated between April 6, 2018 through the date of class

certification. The court granted the Motion to Certify in part, certifying "a class consisting of all

employees of Walgreens who were terminated between April 6, 2018, through April 6, 2021;

who did not abandon or walk off their job; and who received their final paycheck six or more

days after their termination date." ECF 98, p. 11.

### B. Discovery and Mediation

The Parties and their Counsel have investigated the facts and law during the prosecution

of this Action. Such discovery and investigations have included the exchange of information

pursuant to formal and informal discovery, conferences between representatives of the Parties,

and interviews of potential witnesses. Counsel for the Parties have further investigated the

applicable law as applied to the facts discovered regarding the alleged claims and potential

defenses thereto, and the damages claimed by Plaintiff and Class Members. Following arms'

length negotiations conducted with the assistance of a mediator, the Honorable Henry Kantor,

the Parties were able to reach this Settlement. (Agreement at ¶ 3.2).

Plaintiff contends and continues to contend that the Class Claims have merit and give rise

to liability. However, Plaintiff recognizes the expense and length of continued litigation against

Walgreens through trial and any possible appeals. Plaintiff has taken into account the uncertainty

and risk of the outcome of further litigation against Walgreens and the difficulties and delays

inherent in such litigation. Plaintiff is also aware of the burdens of proof necessary to establish

liability for the Claims asserted in the Action, and Walgreens' defenses thereto. Plaintiff has also

taken into account the extensive settlement negotiations conducted with Walgreens. Based on the

foregoing, Plaintiff has determined that the Settlement is fair, adequate and reasonable, and is in

the best interests of all Class Members. Neither this Agreement, any documents referred to

herein, nor any action taken to carry out this Agreement is, or may be, construed as or may be used as an admission by or against the Plaintiff or Class Counsel as to the merits or lack thereof of the Claims. (Agreement at ¶ 3.3).

Walgreens has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action, including that Plaintiff or the Class Members suffered any damages. By settling this matter, Walgreens does not admit liability of any kind. Neither this Agreement, nor any document referred to or contemplated herein, nor any action taken to carry out this Agreement, may be construed as, or may be used as an admission, concession or indication by or against Walgreens of any fault, wrongdoing or liability whatsoever. (Agreement at ¶ 3.4).

## II.     PROPOSED SETTLEMENT TERMS

Counsel for the Parties, after litigation and contentious settlement negotiations, agreed to a settlement that is fair, reasonable and favorable to the Class.  The Class is defined as "all employees of Walgreens who were terminated between April 6, 2018, through April 6, 2021, who did not abandon or walk off their job, and who received their final paycheck six or more days after their termination date." ECF 98 p. 11; (Agreement at ¶ 2.3). Based on this Class definition, the Class Members are those identified in Exhibit B to the Settlement Agreement, which is filed under seal.  Post Decl. Sealed ¶ 2 (Exhibit B to the Settlement Agreement).[2]

### A.  Settlement Payment

The Maximum Settlement Liability Amount to be paid by Walgreens is $2,500,000 (Two Million Five Hundred Thousand Dollars). (Agreement at ¶ 4.3) This amount shall include all

---

[2] Filed under seal.

Settlement Awards, Settlement Administrator costs, Class Representative Service Awards, and Attorney Fees and Costs Award to Class Counsel. *Id.*

Each Settlement Class Member will receive a Settlement Award. In order to receive a Settlement Award, Class Members do not need to submit a claim form. All Class Members who do not opt-out will automatically receive a payment. The total potential "Settlement Awards" shall be the Maximum Settlement Liability Amount less $100,000 in potential Settlement Administrator costs, a $7,500 Class Representative Service Award, and Attorney Fees and Cost Award to Class Counsel of up to one-third the Maximum Settlement Liability Amount. (Agreement at ¶ 4.3.1). Any amount not awarded as a Class Representative Service Award will be redistributed as Unclaimed Settlement Awards, and any amount not awarded as requested for Attorney Fees and Cost Award will be added to the amount of available Settlement Awards. (Agreement at ¶ 4.3.4 and 4.3.5.1).

This is a fair result for the members of the Class. The litigation risks if the case were not settled include, among other things, an adverse decision on the merits, loss of motions which would result in limiting any exposure, and the possibility that a jury would return a less favorable verdict. This could have reduced the amount recovered or denied a recovery altogether to the members of the Class. Class Counsel and Plaintiff wish to avoid these risks and uncertainties, as well as the consumption of time and resources of litigation, through settlement pursuant to the terms and conditions of the Agreement. Post Decl. ¶ 8.

After all of the payments of the court-approved Class Representative Service Award, Attorney Fees and Cost Award, and the Settlement Administration Costs are deducted from the Maximum Settlement Amount, the amount remaining is the Net Settlement Amount. The Net Settlement Amount shall be distributed to Settlement Class Members. The submission of a claim

form is not required to be paid.  Post Decl. ¶ 9.

The amount paid to each Settlement Class Member (his/her "Settlement Award") will be calculated on a pro-rata basis to each class member, according to each class member's proportionate share of the total potential penalty allegedly owed to the class plus 9% statutory interest. Post Decl. ¶ 10. The estimated payment to each Class Member is provided in Exhibit B, attached to the Declaration of Carl Post, filed under seal.

The Settlement Awards shall remain valid and negotiable for one hundred twenty (120) calendar days from the date of their issuance. Following the expiration of the 120 calendar days, the Unclaimed Settlement Awards will be redistributed as follows: half (50%) to a charity of Walgreens' choosing, and half (50%) to one or more of the following organizations to be chosen by Class Counsel: Campaign for Equal Justice, Legal Aid Services of Oregon, or the Oregon Law Center. (Agreement at ¶ 4.3.8)

### B.  Third-Party Settlement Administrator

Subject to Court approval, the Parties have agreed that Epiq Class Action & Claims Solutions, Inc. will be appointed as Settlement Administrator to oversee the administration of the settlement, including issuing notice, answering questions Class Members have, administering opt-outs, and mailing Settlement Awards to Class Members. (Agreement at ¶¶ 2.16 and 4.4.)  All administrative fees, costs and expenses incurred by the Settlement Administrator in connection with administering the Settlement will be paid from the $100,000 allocated for Settlement Administration Costs. (Agreement at ¶ 4.3.6.)

### C.  Class Notice

To achieve notice to the Class, Walgreens will provide the Settlement Administrator with a class list including the following information: the full names, last known addresses, last known

telephone numbers, available personal email addresses, date of birth, and Social Security Numbers of each Class Member. (Agreement at ¶ 4.6.1).

The Settlement Administrator shall mail a copy of the Notice to each Class Member. The Settlement Administrator shall mail the Notice to the address provided by Defendant (unless an updated address is provided by Class Counsel) and any different mailing address from the U.S. Postal Service after performing an initial National Change of Address ("NCOA") search. The Settlement Administrator shall also email the Notice to the personal email address of each Class Member for whom Defendant provides a personal email address. (Agreement at ¶ 4.8.1).

The notice will be substantially in the form of the Notice of Class Action Settlement attached as Exhibit A to the Settlement Agreement. (Agreement at ¶ 2.12). In addition to the mailed notice, the Settlement Administrator will establish a settlement website containing relevant information such as the information shown on the class notice, answers to frequently asked questions, important publicly available case documents (including the operative complaint, answer and affirmative defenses, the Court's order granting class certification, the settlement agreement, all motions for approval of the settlement, attorney fee awards, incentive award, the motion for final approval of settlement after it is filed, and any Court orders or other documents filed with the Court concerning the settlement), and contact information for class counsel. (Agreement at ¶ 4.4.12).

### D. Release of Claims by Class Members Who Do Not Opt-Out

Class Members who do not opt-out and timely accept and negotiate their settlement checks shall release Walgreens and its owners, officers, employees, agents and all Releasees from any and all wage and hour claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorney's fees, damages, action or causes of action of whatever kind

or nature, whether known or unknown, contingent or accrued, that were alleged or that reasonably could have been alleged based on the facts alleged in the Action, including those under any Oregon statute or regulation concerning unpaid overtime, claims for missed meal or rest breaks, claims for liquidated damages, claims for unlawful deductions from wages, claims for conversion of wages, claims for record-keeping violations, late payment and overtime penalties, including claims under ORS Chapters 652 and 653 and OAR Chapter 839 Division 1 and Division 20, as well as any other Oregon wage and hour statute or regulation, through the date the lawsuit was filed and the class period ends, which is April 6, 2021. (Agreement at ¶ 4.2.1). The Release of Claims does not apply to any claims that Plaintiff or Settlement Class Members may have for workers' compensation benefits, unemployment benefits, vested retirement benefits, or any other similar non-waivable rights. (Agreement at ¶ 4.2.2).

### E.  Exclusions and Objections

Any Class Member who desires to be excluded from the class must send a written request for exclusion to the Settlement Administrator with a postmark date no later than 60 days after Class Notice is sent complete an Exclusion Request Form available at the website established by the Settlement Administrator. (Agreement at ¶¶ 2.14 and 4.9). The Settlement Administrator will provide a list of the names of each Class Member who submitted a timely exclusion to counsel for Defendants and Class Counsel after the deadline passes. (Agreement at ¶ 4.10).

### F.  CAFA Notices

In compliance with the Class Action Fairness Act, 28 U.S.C. § 1715, within 10 days of this filing, Walgreens will serve written notice of the proposed class settlement upon the United States Attorney General and the appropriate State agencies. (Agreement at ¶ 4.7).

### G. Attorney fees and costs

Class Counsel will apply to the Court for an award of an amount up to one-third (1/3) of the Maximum Settlement Amount for reasonable attorneys' fees and reimbursement of litigation costs. (Agreement at ¶ 4.3.5.) Plaintiff will also apply for approval of a Class Representative Service Award in an amount not to exceed $7,500. (Agreement at ¶ 4.3.4.). The motion shall be scheduled for the Final Approval Hearing but will be filed at least fourteen days before the deadline to submit written objections to the Settlement. Decl. Post Decl., ¶ 11.

## III.    THE SETTLEMENT MEETS ALL CRITERIA FOR PRELIMINARY APPROVAL

A class action may not be dismissed, compromised, or settled without the approval of the Court. Fed. R. Civ. P. 23(e). Federal Rules of Civil Procedure, Rule 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)(citing Manual for Complex Litigation (Third) § 30.41, at 236–37 (1995)). The settlement approval procedure includes the following steps: (1) preliminary fairness review of the proposed Settlement; (2) dissemination of mailed and/or published notice of the Settlement and formal fairness review to all affected class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard and evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. Manual for Complex Litigation (Fourth) §§ 21.632-21.635 (2004).

The primary concern of judicial supervision at this stage of the settlement process is to ensure "[(1)] the proposed settlement appears to be the product of serious, informed,

noncollusive negotiations, [(2)] has no obvious deficiencies, [(3)] does not improperly grant preferential treatment to class representatives or segments of the class, and [(4)] falls with the range of possible approval." *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.,* 157 F. Supp. 2d 561, 570 n 12 (E.D. Pa. 2001)); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998); *see* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Action* § 11.22 (4th ed. 2002)*.*

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See* 4 *Newberg* § 11.41, at pp. 87-88 (and cases cited therein); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976). These concerns apply in this action where the alleged practice affected hundreds of employees. To make this fairness determination, courts must give "proper deference to the private consensual decision of the parties" since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *See Hanlon,* 150 F.3d at 1027. Indeed, because "a settlement is the offspring of compromise," the question upon preliminary approval "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* When examining settlements, a presumption of fairness exists where: (1) settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and court to act intelligently and (3) counsel is experienced in similar litigation. 4 Newberg § 11.41.

## A.  The Settlement Merits Preliminary Approval

As noted above, the primary concern of judicial supervision at this stage of the settlement process is to ensure "[(1)] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [(2)] has no obvious deficiencies, [(3)] does not improperly grant preferential treatment to class representatives or segments of the class, and [(4)] falls with the range of possible approval." *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1079.

### 1.  The Class Has Been Adequately Represented

Plaintiff and Class Counsel have more than adequately represented the Class. Plaintiff's counsel investigated the facts and law during the prosecution of this Action. Such discovery and investigations have included the exchange of information pursuant to formal and informal discovery, conferences between representatives of the Parties, and interviews of potential witnesses. The discovery consisted of payroll and other information necessary to calculate potential penalty wages for potential class members pursuant to ORS 652.150. Counsel for the Parties have further investigated the applicable law as applied to the facts discovered regarding the alleged claims and potential defenses thereto, and the damages claimed by Plaintiff and Class Members. Class Counsel is experienced with these class claims and has settled similar claims on behalf of employees. Post Decl. ¶¶ 2, 12, and 15.

### 2.  The Settlement Was the Product of Informed Non-Collusive Negotiations

The proposed settlement was the product of arm's length, non-collusive negotiations, including multiple mediations with a respected mediator. Post Decl. ¶ 4; *see Satchell v. Fed. Exp. Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *44 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").) After formal mediation and settlement negotiations, the parties reached the

agreement based on the mediator's proposal, the experience of counsel and the uncertainties of protracted litigation. In addition to the total settlement amount, counsel insisted that the settlement payment be non-reversionary (i.e., maximizing payments to class members and aligning the interests of all parties to a successful settlement administration).[3]

### 3. The Settlement Has No Obvious Deficiencies

The Net Settlement Amount is the portion of the Maximum Settlement Amount remaining after deductions of the Settlement Administration Costs of $100,000, Court-approved Attorneys' Fees and Costs of up to $833,333.33, and the Court-approved class representative enhancement of no more than $7,500. If all requested amounts are approved, the amount to be distributed to the class members is estimated to be $1,559,166.67. The amount paid to each Settlement Class Member (his/her "Settlement Award") will be calculated on a pro-rata basis to each class member, according to each class member's proportionate share of the total potential penalty allegedly owed to the class plus 9% statutory interest. Post Decl. ¶ 5.

The potential penalty for each Class Member was calculated as follows. First, the number of penalty days was calculated by taking the number of days between termination of employment and the date of alleged final pay and then subtracting five days to avoid the individualized inquiry to determine whether an employee gave notice to quit or left employment by mutual agreement.[4] The number of penalty days was then multiplied by 8 hours and further multiplied

---

3 The only portion that reverts to Walgreens is any unused portion of the $100,000 allocated for Settlement Administration Costs. (Agreement at ¶ 4.3.6).

4 See ECF 98, p. 5 "Limiting the class to members who received their final pay six or more days after their termination date avoids the need for individualized inquiry to determine which class members gave notice of their intent to quit. Likewise, limiting the class this way also avoids the need to identify which members left their employment by mutual agreement because if an employee is discharged or their employment is terminated by mutual agreement, wages earned are due by the end of the next business day. ORS 652.140(1)."

by the hourly rate of each employees. For example, if an employee was paid alleged final wages 15 days after termination and earned $30.00 per hour, the penalty would be 10 days multiplied by 8 hours per day multiplied by $30.00 per hour, which equals $2,400. Each employee's prejudgment interest is 9% simple interest based on the number of days between the date final wages were paid through present. Post Decl. ¶ 6. The amount received by each class member therefore fairly represents their individual potential damages.

The total potential penalties, pro rata distribution to class members, and approximate recovery for each Class Member is provided in the Post Declaration, Exs. B and C. This is a significant recovery for each class member. Post Decl. Sealed ¶ 4; Post Decl. Sealed, Ex. C at p. 1.

In addition, the class members are waiving only their claims asserted in the action or could have been raised in the action related to the facts and circumstances alleged in the complaint. *See Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 U.S. Dist. LEXIS 134872, at *4, 8, (N.D. Cal. Sept. 29, 2016) (approving class settlement and scope of the release was limited to "the factual predicate in the operative complaint").

### 4. The Settlement Does Not Grant Preferential Treatment to Plaintiff or Segments of the Class

The Settlement will treat class members fairly according to the formula set forth above. The class representative's modest Class Representative Service Award of $7,500 is justified under the case law and the facts of this case. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (recognizing service awards to named plaintiffs in class actions are permissible and do not render a settlement unfair or unreasonable); *Glass v. UBS Fin. Servs.*, Inc., No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *50-52 (N.D. Cal. Jan. 26, 2007) (approving

payments of $25,000 to each named plaintiff); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 268 (N.D. Cal. 2015) (awarding named plaintiff in wage and hour class action $10,000 as a service award, and an additional $5,000 award solely for the general release that the named plaintiff executed as part of the settlement agreement); *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff). In *Van Vranken*, the court articulated the following relevant factors to assess the appropriateness of a Class Representative's enhancement: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representatives; 3) the amount of time and effort spent by the class representatives; 4) the duration of the litigation, and; 5) the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation. *Id*. at 299. These factors support the need for service payments to the class representative.

Plaintiff Taylor Lemons is releasing all claims he may have against Walgreens. Additionally, Plaintiff likely would have been able to resolve his personal claim more quickly if he did not pursue claims on behalf of the Class Members and he took on substantial risk to obtain relief for the Class Members. These factors justify a modest service award of $7,500.00.

### 5.  The Settlement Falls Within the Range of Possible Approval

The primary inquiry at this stage is whether Plaintiffs' expected recovery absent settlement balances appropriately against the value of the settlement offer. *See Harris v. Vector Mktg. Corp.,* No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *28-29 (N.D. Cal. Apr. 29, 2011). Courts "preview the factors that ultimately inform final approval:" (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status; (4) the amount offered in settlement; (5) the extent of

discovery completed; (6) the experience and views of counsel; (7) the presence of a government

participant (not applicable here); and (8) the reaction of class members. *Id*

      The Settlement Amount is fair compared to the estimated full relief for Plaintiff and the

class members' claims when considering the risks involved and additional costs and attorney

fees that would be associated with proceeding through trial. As noted above and further

discussed in the Post Declaration under seal, this is a significant recovery for each class member.

      Compare this result to *Ma v. Covidian Holding, Inc.*, No. SACV 12-02161-DOC (RNBx),

2014 U.S. Dist. LEXIS 13296, at *12 (C.D. Cal. Jan. 31, 2014), in which a settlement providing

"9.1% of the total value of the action [was] 'within the range of reasonableness.'" *Id.* at *5; *see*

*also O'Sullivan v. AMN Servs., Inc.*, No. 12-cv-2125-JCS, ECF No. 92 (N.D. Cal. Feb. 7, 2014)

(approving gross settlement of $3 million for 4,246 class members who filed claims ($478.12 net

average payment) where total exposure before penalties and interest was estimated at $108

million, for a recovery of less than 3% of full relief). In comparison, settlements that have been

disapproved are dramatically different from this one. For example, in *Lusby v. Gamestop Inc.*,

297 F.R.D. 400 (N.D. Cal. Mar. 25, 2013), the rejected settlement would have been $750,000 for

13,872 people – paying a *de minimis* $0.26/shift, after fees/costs, etc. were deducted.

## B.  The *Hanlon* Factors Also Support the Settlement

      At final approval of a settlement, a court is to balance several factors, including: "[i] the

strength of the plaintiffs' case; [ii] the risk, expense, complexity, and likely duration of further

litigation; [iii] the risk of maintaining class action status throughout the trial; [iv] the amount

offered in settlement; [v] the extent of discovery completed and the stage of the proceedings; [vi]

the experience and views of counsel; [vii] the presence of a governmental participant; and [viii]

the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150

PAGE 18    **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY**    Snyder, Post & Burgess
**APPROVAL OF CLASS ACTION SETTLEMENT**    (971) 442-9303
www.civilrightsoregon.com

F.3d 1011, 1026 (9th Cir. 1998).

### 1. The Strength of Plaintiff's Case

The Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 975 (E.D. Cal. 2012) (citation omitted). In so doing, however, the Court does "not reach 'any conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation.'" *Brewer v. Salyer*, 2017 U.S. Dist. LEXIS 101374, 2017 WL 2813178, at *3 (E.D. Cal. 2017).

Here, Defendants deny all allegations of wrongdoing and allege numerous affirmative defenses. Plaintiff contends and continues to contend that the Class Claims have merit and give rise to liability. However, Plaintiff recognizes the expense and length of continued litigation against Walgreens through trial and any possible appeals. Plaintiff has taken into account the uncertainty and risk of the outcome of further litigation against Walgreens and the difficulties and delays inherent in such litigation. Plaintiff is also aware of the burdens of proof necessary to establish liability for the Claims asserted in the Action, and Walgreens' defenses thereto. Plaintiff has also taken into account the extensive settlement negotiations conducted with Walgreens. Post Decl. ¶¶ 13-15. This factor weighs in favor of approval.

### 2. The Risk, Expense, Complexity and Likely Duration of Further Litigation

"Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'" *Munoz v. Giumarra Vineyards Corp.*, 2017 U.S. Dist. LEXIS 95910, 2017 WL 2665075, at *9 (E.D. Cal. 2017). Moreover, "[e]mployment law class actions are, by their nature, time-consuming and expensive to litigate." *Aguilar v. Wawona Frozen Foods*, 2017 U.S. Dist. LEXIS 76751, 2017 WL 2214936, at *3 (E.D. Cal 2017).

The complexity and the expense of a Class trial would be considerable and would almost certainly result in appeals by one or both sides. At trial, Plaintiff would be required to show that Defendants had unlawful policies and practices, set forth evidence that Defendants' conduct was willful and individualized proof would likely be required to establish the amount of penalty wages owed to each employee. In addition to increasing the complexity, expense and duration of this litigation, the accumulation of such individualized issues would raise a risk of non-certification at some point in these proceedings. This factor weighs in favor of approval.

### 3. The Amount Offered in Settlement

The amount offered in settlement is generally considered to be one of the most important consideration of any class settlement. See *Kutzman v. Derrel's Mini Storage, Inc.*, 2020 U.S. Dist. LEXIS 13314 (E.D. Cal. 2020). "Courts regularly approve class settlements where class members recover less than one quarter of the maximum potential recovery amount." *Kutzman, supra,* 2020 U.S. Dist. LEXIS 13314, at *30.

As discussed above and in further detail in the Post Declaration filed under seal, the settlement amount represents a significant recovery for the class. This factor weighs in favor of approval.

### 4. The Extent of Discovery Completed

Class Counsel has conducted a thorough investigation into the facts of the class action. Class Counsel began investigating the Class Members' claims before this Action was filed. Plaintiff engaged in formal discovery and obtained the production of hundreds of pages of documentation. In advance of mediation, Defendants provided the information necessary for Class Counsel to intelligently negotiate a settlement. Class Counsel is experienced with the claims at issue here, as Class Counsel previously litigated and settled similar claims in numerous other actions.

Accordingly, the agreement to settle did not occur until Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation.

Plaintiff engaged in a full investigation of the claims with the necessary data and documentation. The Parties engaged in multiple mediation sessions, conducted by a mediator with experience in employment class actions, and agreed to settle this action pursuant to the terms and conditions of a proposal provided by the mediator. Based on the foregoing information and data and their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendants for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate, and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendants, and numerous potential appellate issues. There can be no doubt that Counsel for both parties possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation.

In *Glass*, the Northern District of California recently granted final approval of an overtime and meal period wage class action although no formal discovery had been conducted prior to the settlement:

> Here, no formal discovery took place prior to settlement. As the Ninth Circuit has observed, however, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." See *In re Mego Financial Corp. Securities Litigation*, 213 F.3d at 459.

2007 U.S. Dist. LEXIS 8476 at *14.

Here, Class Counsel was in a superior position to evaluate the fairness of this settlement

as in *Glass* because they conducted formal discovery, as well as independent investigations, interviews and due diligence to confirm the accuracy of the information supplied by Defendant.

### C. The Notice to the Class Is Sufficient.

The proposed Class Notice and proposed method of distribution are appropriate. *See* Fed. R. Civ. P. 23(c)(2)(B); *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). The proposed form of notice will be sent via first-class mail to the last known mailing address of each class member and, prior to mailing the Class Notices, an experienced administrator will consult the United States Postal Service's National Change of Address Database to review and possibly update the class member's mailing address. The Class Notice will provide the details of the case and the proposed settlement and the specific options available to class members, as described above. The Class Notice will provide class members with information from which they can make an informed decision about whether to opt out, object, or take no further action and receive payment from the proposed settlement. Thus, the proposed Class Notice is adequate.

### IV. PROPOSED SCHEDULE OF SETTLEMENT PROCEEDINGS

The Parties propose the following schedule for the fairness hearing and final proceedings:

| Event | Timing |
|---|---|
| Preliminary Approval | TBD |
| Last Day for Defendants to provide Class Member data to the Settlement Administrator | Five (5) calendar days after entry of the order granting preliminary approval |
| Notice Date: last day for Settlement Administrator to mail the Class Notice | Twenty-eight (28) calendar days after preliminary approval is granted |
| Deadline for Objections, Exclusion Requests, and Disputes | Sixty (60) calendar days after the date on which the Notice is initially mailed to Class Members. |
| Deadline to file motion for final approval and supporting documents | Twenty-eight days prior to motion for final approval of class action settlement, attorneys' fees and costs |

| Event | Timing |
|-------|--------|
| Hearing on final approval of class action settlement | At least one-hundred and fifty (150) calendar days after preliminary approval |

## V.     CONCLUSION

The proposed class action settlement is fair, adequate, and reasonable. It will result in significant and immediate payment to Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arms' length negotiations conducted by counsel for respective parties who are experienced in wage and hour litigation. For the foregoing reasons, the parties respectfully request that the Court grant preliminary approval of the proposed Settlement, enter a preliminary Order, approve and authorize mailing of the proposed Class Notice, and set a date for a final approval hearing that is at least 150 days from the date of Preliminary approval.

DATED: January 16, 2026

SNYDER, POST & BURGESS

 s/ Carl Post
**Carl Post, OSB No. 061058**
carlpost@civilrightsoregon.com
**John Burgess, OSB No. 106498**
johnburgess@civilrightsoregon.com
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (971) 442-9303
Facsimile: (503) 241-2249
Attorneys for Plaintiff